Next case for argument is 24-1212, Sunkist Growers v. Intrastate Distributors. We're ready, Ms. Lindquist, whenever you are. It's okay. Good morning. My name is Leigh Ann Lindquist. May it please the court, I'm here on behalf of Appellant Sunkist Growers, Inc. I'd like to reserve five minutes of my time for rebuttal. This is a case about soft drinks, low-cost impulse purchases. Can I just cut to the chase? It's been a long morning. Let's assume that we agree with some of your major points, just hypothetically, and I speak only for myself. Are we compelled to remand it to the board for kind of a do-over or to look for more evidence or whatever? Or is your view that if we disagree with, I think, the two factors that the board relied on, there's no more to do and we're done here? I think you should overturn the decision. I think you should reverse the decision. I don't think it needs to be remanded. With respect to Burns, I think the cases are clear. Burns is the outlier. That case did involve an application that had a design element, and all the other cases that we cite in our brief are about word marks. And that's the situation here. It's word marks. And I think you guys can just reverse the decision if you look at the two word marks. Look, the question of weighing the DuPont factors, I understand it is de novo for us to do on our own if we choose to correct. And so I know not all the factors are necessarily weighed evenly. So this is an oversimplification. But you basically, you in quotes, won four to two at the board. Overwhelmingly, the majority were in our favor. But if we were to, we have the dispute under the law, we could say we're weighing four to two differently and now you prevail. But for sure, if we came out 6-0, we can say on de novo weighing, we don't need to set it back, you prevail. Those are options that are available to us, right? Yeah, those are all acceptable. Can I just, my understanding in your brief, you were arguing that the two factors the board found against you should be neutral or were you advocating that they be found in your favor? Oh, the similarity of the marks, that should be found in our favor. Okay, can I just ask you a little about the burdens of the different pieces of this? Because it's always confusing. I mean, the argument is made that the board, it was clear that there was not substantial evidence to support its findings about the sales and the use of the other mark. Whose burden though? I mean, if this is establishing confusion, was it not your burden to establish that there was no confusion? How does that work? So there are factors, right, under DuPont that we have to look at. We obviously do not have information about the appellee's sales, right? So they provide information and then we have to review that information and make arguments about it. The burden, I don't think, is on Sunkist to prove that there's no confusion, no actual confusion. Also, that tends to be, if you look at the cases, that tends to be the lesser weighed factor. You guys have said before that it can't be dispositive, the finding of lack of actual confusion. In a case like this where you have low cost impulse purchases, it's unlikely that someone will come and report actual confusion to the trademark owner. And what, in your view, just generally, I mean, you know, we review a lot of board opinions and we affirm a lot of board opinions. What led the board, in your view, to go astray? Was it just the sort of overdoing the looking at the kiss mark, which reportedly is trade dress? Is that what led this all to unfold against you? I don't know what they were thinking. I can make an assumption that perhaps they thought there was evidence of long use between the two marks and there was no actual confusion. If I'm making assumptions, I think that's what they did first. And then maybe they looked at the marks to try to find dissimilarity after that and then looked at the trade dress. Okay. How about we hear from the other side? Oh, okay. Any questions? Good morning. Good morning. She'll say good morning. May it please the court, Michael Cummings for Appali Interstate Distributors. Can I ask you a housekeeping question first? Sure. There was a motion filed by your friend the other day. Oh, no objection. No objection. I didn't have a chance. All right, so we'll grant the motion. This is just to add the page to the subscript. Okay, granted. Thank you. In short, we obviously believe the board was correct. And we say in the weighing of the factors, the one factor that can trump all the others is the dissimilarity or similarity of the mark. You could have all the rest of them go against you, but if the marks are dissimilar enough, then you can still prevail. And we think within the dissimilarity question, we think that it doesn't always, but the meaning and the commercial impression can trump over the apparent similarities in the mark. And we think that's sort of common sense. You could always, the similarity here is basically have a common word, right? Kissed and sunkissed. Right. But in normal English language, you can put two words together and radically change the meaning. I thought of a couple of you, you know, it could be a word game, the New York Times, hot and hot dog. Is kissed K-I-S-T an actual word? K-I-S-T, yes. Well, kissed, and I think this is kissed. I mean, the impression is that there's a word kissed, like a human kiss with your lips, right? Right, but that's not K-I-S-T. No, but in trademarks. My point is that it actually feels intuitively like this matters, right? Ordinary language words can be deployed in all kinds of ways.  When sunkissed creates its trademark, it uses, you know, sun as a word, and it combines it with something that is obviously concocted. It's a new mix of letters that reminds people of things, but itself would convey that this is not just using ordinary language. It's signaling, this is mine. Well, it can do that. I think what you see in the trademark word is people all the time misspell a word, but leave it phonetically the same. Bud light. Nobody doubts that the light is something, bud light is a light beard, right? And, of course, you avoid, people are motivated to avoid generic spellings of words because you couldn't render your mark descriptive or worse, generic can be the kiss of death. So it is common, I think, in trademark. When you're looking, when someone says the word N-U in a trademark, I'm pretty much thinking it's the new and improved, right? Presumptively, not always. In any of the millions of misspellings you see in trademarks, there is just a widespread practice of misspelling a word, leaving it phonetically the same so that you avoid being descriptive or worse, generic. And we think here. And what does that have to do with the similarity inquiry? Because it does go to the meaning. The court found a difference in meaning. In the similarity, it's a kiss, meaning like a human kiss with lips, or sun kissed, meaning touched by the sun, you know, often sun rays. It found that the word kiss, K-I-S-T, evokes that, evokes those two meanings, and those meanings are different. So putting those two words together, you create a very different word. They have a very different meaning than when you have them together. There was evidence for that in the dictionary. And I think the great weight of practice in the trademark world confirms that a misspelled word like that with the exact same phonetic pronunciation would evoke the actual English word that it's meant to. But doesn't this record, even accepting your proposition, and again, I know there are legal questions, but let's assume a substantial evidence test. The board relied heavily on extracting a kiss mark. There's no indication in the record how that that was shown to anyone, that that was used, how often it was used. There are loads of pictures in which there's no kiss. There's loads of pictures in which it has only a small meaning. And then the same is true of the sun. There's plenty of pictures of sun kissed, not even having the sun, and that can have different meanings, but just dealing with fruit flavor. So just because we don't have, there's no evidence in the record that I could discern that this kiss mark, which the board seemed to think stood out, was in any of the distributions to the customers. Nobody's quantified whether that... We didn't have it in the board. Actually, I hate to do this, but I kind of agree with you with respect to just the kiss mark. But I think very different with the sun kiss mark. I want to make sure we're talking about the same thing. Just to be clear, I think my colleague's talking about the red lips. The red lips. I'm agreeing with... So you're agreeing there's no actual evidence in our record of the red lip mark being used by your... No, there is definite... Let me make the distinction here, the overall distinction about the use of trade dress. I think it matters here, Your Honor. The overall use of trade dress, and that's counsel's point, that the case law says you can never do it. You can never use trade dress in asserting the meaning of a word mark. We may be interested in a legal question. I don't know, but I suppose I'm not answering your... Just the fact... But I said that there's no evidence. I don't think... Sorry. May I just ask? I think we're having the same concern. In this record before us that I'm being asked to review for substantial evidence, what is the substantial evidence that your client ever used as part of its trade dress, the red lips, the lipstick... I think we have that in declarations from our clients. I'll give you a minute. I'll try to dig it up. I thought the issue was that you did use it in sending something to distributors, but there's no reason to think that it was... No evidence to suggest that it was used to the consumers. No, there was distributor packaging when they put it in your... When you put it in your store, there's a whole packaging display that comes with it. And there's evidence that the lips are on the packaging that the consumers see. Yes, there is evidence in there. Okay, well, we can check that. Okay, yeah. And so there is evidence. And what that evidence does is the evidence, particularly on the sun-kissed side, confirms and strengthens the dictionary definition and the impression. Well, wait. So we're moving just to the sun thing. So, I mean, I looked at the record. It didn't seem to me that Mr. Davish's declaration or others really established that this stuff was sent on to the consumers or even the quantity because it's clear from all the diagrams we have that some of your products had this on it in some packaging and others did not. So I don't... I'm just telling... Okay. I'll give you a chance to respond, but I don't see where the evidence in the record would be substantial. I mean, that there's any substantial evidence to support the conclusion. And so... So I'm going to turn things on. I can't get the site... But I would respond to that, that it's the registrant's use here that is the most important and what would also the board relied on. Because... But the mark itself doesn't have the kiss. No. And that's the whole point. That's why the general rule is that you don't use... The general rule is we agree that you don't generally use trade drafts when dealing with a word mark. Okay. You want to turn to the sun, though, because I think you thought... Well, I think it's more than the sun. It's the whole things around the idea of being sun-kissed, which is citrus fruit and the colors of the sun. Predominantly oranges and some yellows and citrus fruit and people picking, you know, on a sunny day, people picking citrus fruit off of trees. You have overwhelming evidence for decades of associating... Because it's an initial association with citrus fruit and there's a... You know, it grows in sunny climates. You have this association. Citrus fruit is something that... And actually, the appellant referred to in their own brief that citrus fruit is something that is kissed by the sun. It grows in sunny climates. They've had essentially admitted that in the dictionary deficiencies. So you have these overwhelming decades. And what it doesn't... You're not... But didn't you just give away your case? Because that is their argument. Well, but their argument is give it away for them, Your Honor. That's what I'm asserting. Because... Now, let me finish and then you can respond. Because they're... I think that one of their arguments is kissed... You kind of said kissed by the sun. And we're talking about fruit flavors. The commonality here is they're both distributing these sodas and these drinks that are fruit flavored. So... No, that's... Go ahead. That's not the commonality of the meanings of the Marx or the commercial impressions of the Marx. It's not... Fruit is not... But the fact that it's fruit, it's primarily citrus fruit. Which is a sun-related fruit. And it's... And so it's... You see lots of, you know, big orange circles with it. Because it's presumably the sun and lots of their packaging. Well, so in your Marxist, what is... Who is kissing what? Is it also a kiss from the sun? I mean, if it's... Well, that's actually... When you say... We would submit that when you say the word kissed by itself, kissed by the sun is pretty much the last thing that comes to your mind. If I go say, oh, I bet you that girl's been kissed. It's very different to have been a girl who's been sun-kissed. I mean, the products are fruit. So you're saying sun-kissed... Well, the products are sodas. Yeah, but they're fruit-flavored sodas. Some of them are fruit flavors. Were... Fruit flavors. Some of them, yes. Not all of them. Certainly not all of, you know, the record does not say that they're all fruit flavors. They have fruit flavors, but they're not all fruit flavors. Do we have any quantity in the record about what fruit-flavored and non-fruit-flavored uses have been put? No, I don't think we have the... We don't have the exact breakdown in numbers. You can see the spectrum of flavors that we provide. But again, it's the differences in the marks. The difference, the similarities, the marks is the main thing. And putting two words together changes the meaning. That change is not only confirmed by the dictionary. And I think normal person's understandings of them. But it is the... It is the registering itself that has driven home the meaning of sun-kissed being different from the normal use of kissed by itself, which is a human action. They have brought in the whole notion of being out in the sun with it, which is different than human people kissing, even if it's a little girl kissing her puppy, right? Those are two very different human experiences, actions, meanings. And that can trump... And so it has to go... And certainly, you want to put it in another fact, it has to do with the fame. Because they've gained fame in this way of associating their product with sun-related things, either the sun itself, sun colors, or sun-related fruit, which is citrus fruit. They established that fame. They've taught, to the extent that they've... Almost like they've taught their market what sun-kissed means. You know? Thank you. Omas. Why don't you address his final point, which is... Sorry, what? His final point, which is the main point in this. Is that they're just different words.  And sun has to be given some recognition, and it's definitely not included in their mark, which is just kiss. That's right. So I want to address just a couple of things very quickly. There's no correct pronunciation of a mark. That's incredibly well established. So arguments about K-I-S-T being kissed, or... I just want to make sure that you understand that point. There's no correct pronunciation. The marks do sound alike, but I want to make that point here. Meaning that kissed isn't kissed? K-I-S-S-E-D? I think it is pronounced that way. But again, there's no correct pronunciation, right? And then there are other definitions for the word kiss when you're looking in the dictionary, and one of them is to touch someone gently or lightly. So the board, again, just selected, in my opinion, random definitions because they didn't look at the goods, which they're required to do when they're looking at the marks. To determine connotation. But again, his final point, which is the main point of this, is that sunkissed is different than kissed. They're two different words. But the test is not identity, right? It's similarity, and the similarity can be as to sound, pronunciation, or connotation. And we are of the opinion the two marks are similar in sound, they're similar in appearance, and they're similar in connotation because they're both with respect to these goods. And for example, one way you have to look at this in respect to the goods is kiss applied to a rock band has a totally different meaning than kiss is applied to some drink, right? Soft drink, right? You have to look at the goods, and the board totally failed to do that. And then when they looked at the trade dress, they didn't look at the trade dress. They just looked at marketing. Also, our goods are not citrus fruits. They're soft drinks, right? I think that's an important point here. And last, they do say only that they sell fruit flavored waters and only fruit flavored soda. They say this at 1729. There's no indication that they sell just unflavored water. Everything's about flavor. Their marketing's about flavor. You see a lot of people say, you see that in different places, too. Thank you. We thank both sides. The case is submitted.